# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1860
Filed June 24, 2026

————————————

**In the Interest of L.C., M.C., R.C., and L.C., Minor Children,**

**J.C., Father,**
Appellant,

**B.K., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Scott County,
The Honorable Christine Dalton, Judge.

————————————

**AFFIRMED ON BOTH APPEALS**

————————————

Patricia Rolfstad, Davenport, attorney for appellant father.

Barbara E. Maness, Davenport, attorney for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Jean Capdevila, Davenport, attorney and guardian ad litem
for minor children.

————————————

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

Brook and Jay,[1] a mother and father, separately appeal following the juvenile court order terminating their parental rights to four children under the age of four. The Iowa Department of Health and Human Services removed the children based on concerns that Brook and Jay lacked parenting skills and struggled with substance use, homelessness, and domestic violence. On appeal, neither parent disputes that the State proved the grounds for termination. Rather, they argue termination is not in the children's best interests.

After independently reviewing the record, we reach the same conclusion as the juvenile court regarding the termination of parental rights. Neither parent can provide a stable home or meet the children's needs. The children's interests in a secure future are best served by termination.

## I.     Facts and Prior Proceedings

Brook and Jay have four young daughters. At the time of the termination hearing, R.C. and M.C., the twins, were three years old; Le.C. was nearly two years old, and Lo.C. was nine months old.

The department removed R.C., M.C., and Le.C. from their parents' custody in August 2024. The family was unhoused and squatting in an apartment with no utilities. There was no food, formula, diapers, clean clothes, or other supplies for the children in the apartment.

At removal, Le.C. was eight months old and weighed only 13 pounds. The department found her in a car seat; she was "lethargic with limp arms

---

[1] We use pseudonyms for the parents' names, as allowed under Iowa Court Rule 21.25.

and legs" and was "unable to move her head or engage."[2] R.C. had an eye condition and an ear infection that required attention. All three children were "very dirty giving an appearance of long term need for bathing." The parents acknowledged that they were unable to meet the children's basic needs, though neither recognized why the children were being removed from their care.

The youngest child, Lo.C., tested positive for cocaine and marijuana at birth. The department removed her from the parents' custody in December 2024 when she was just two days old. The juvenile court adjudicated the three eldest girls as children in need of assistance (CINA) in October 2024 and adjudicated the youngest as CINA in February 2025. R.C., M.C., and Lo.C. live together in a foster home. Because of her medical needs, the department placed Le.C. in a separate foster home. The foster families coordinate sibling visits to maintain the bonds among all four children.

After removing the four children, the department offered Brook and Jay many services, including family-centered services, transportation and bus passes, mental health services, housing assistance, and substance-use treatment. The parents did not participate in those services. The juvenile court ordered both parents to take drug tests and enter treatment in September 2024, but neither complied with the order. The department offered the parents two two-hour visits with the children every week. But the parents only attended about half of those scheduled interactions. Then, in

---

[2] Le.C. has had lasting impacts from spending so much time in the car seat. She struggled to extend her legs or put weight on them, so a doctor referred her to physical therapy. Because she was so underweight at removal, her caregivers needed to pay special attention to her weight gain.

July 2025, both parents cut off contact with their children without notifying the department or the court of their whereabouts.

They reappeared at the termination hearing[3] in September 2025, stating they had entered a treatment program in Arizona.[4] As of the hearing date, Brook and Jay had been enrolled in the program for seventeen days. The guardian ad litem (GAL) aptly summarized the dilemma facing the court, "I'm really glad that the parents are in programming in Arizona. . . . I hope they stay in those services. I hope they can go on and be successful from this point . . . . [But t]hey just are not ready to have the children at this point."

In its termination order, the juvenile court noted that "both [parents] looked and sounded much healthier than during past hearings, and more able to communicate," but "the court wishe[d] they had taken this step earlier." The court viewed termination as "a difficult decision" because it did "not have a crystal ball to predict whether or not [Jay or Brook] will be able to succeed in getting sober and reaching a stability that allows them to parent." The juvenile court ordered termination of both parents' rights to all four children, noting that the children need a full-time and stable parent now: "The harm to the young children is waiting longer only to have the parents fail to follow through again. . . . While the parents have taken steps to resume the care and custody of their children, they didn't start until September []

---

[3] Both parents appeared remotely at the termination hearing.

[4] Phoenix Rescue Mission is marketed as a comprehensive program that helps with homelessness, substance use, and poverty. In his testimony, Jay described the program as an "18-month crisis center intensive residency program. It's for people [who are] seeking recovery from chemical dependency and other life controlling problems." Brook and Jay said they felt they had to go to Arizona because no program like that existed in Iowa. But the juvenile court noted that similar programs did exist closer to home and that the department offered Brook and Jay referrals to those programs.

2025, over a year after the offer of services by [the department]." The parents appeal separately.

## II.    Scope and Standard of Review

We review termination orders de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Generally, we follow a three-step analysis. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). First, we examine whether the State has proven statutory grounds for termination under Iowa Code section 232.116(1) (2025). *Id.* Second, we analyze whether termination was in the best interests of the children. *Id.* Finally, we determine whether a permissive exception under section 232.116(3) applies which would preclude termination. *Id.* We need not address any step not raised by a parent. *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc).

Neither Brook nor Jay disputes that the State proved the statutory grounds for termination of their parental rights. Instead, they both argue that termination was not in the best interests of the children. Brook and Jay also mention the possibility of additional time for reunification or establishing a guardianship, but the State argues that such passing references without factual argument or legal citation are insufficient to raise the issue for appeal. We agree with the State on those issues. *See In re J.R.*, No. 22-1470, 2023 WL 2148760, at *3 (Iowa Ct. App. Feb. 22, 2023) (reaffirming that "scattered references" to an issue without detail or authority is insufficient to raise the issue). Thus, we address only the best-interests argument.

## III.   Best Interests Analysis

When considering whether to terminate the rights of a parent, we give primary consideration to the children's safety, to the best placement for furthering the children's long-term nurturing and growth, and to their

physical, mental, and emotional condition and needs. Iowa Code § 232.116(2).

Brook contends termination was not in the children's best interests because both parents are making "radical changes" to facilitate reunification. Similarly, Jay argues that the Arizona program was "changing his life" and "he was making . . . a genuine and sincere commitment to regain custody of his children." Indeed, the juvenile court recognized the parents' progress in addressing their substance use and life skills. And we commend them for that effort. But it has come too late. We cannot "gamble with the children's future" as they wait an indeterminate amount of time for a stable home. *In re D.W.*, 385 N.W.2d 570, 578 (Iowa 1986) (citation omitted). At the time of termination, Brook and Jay were still new to their programs, and we, like the juvenile court, have no way of predicting their prognosis. We also agree with the juvenile court's assertion that, even if Brook and Jay succeed in Arizona, it could take months for them to establish a home and assume the role of being parents again.[5]

Truth is, Brook and Jay had over a year to address their issues through the options offered by the department. But they waited until just before the termination hearing to start treatment. "[A] parent cannot wait until the eve of termination . . . to begin to express an interest in parenting." *In re C.B.*, 611

---

[5] At the termination hearing, Brook and Jay requested that the children be moved to Arizona to live with them. Brook's program at the facility allows children to live with their mothers while on-site. The GAL feared that this move would cause the children more trauma without providing permanency. Another drawback to that plan was that the department needed to evaluate the program and living facility before approving transfer of the children to Arizona, which could take months to finalize.

N.W.2d 489, 495 (Iowa 2000). These children are young and need stable homes with reliable caregivers.

And for children in foster care, the juvenile court may consider "whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family, and whether the foster family is able and willing to permanently integrate the child into the foster family." Iowa Code § 232.116(2)(b). Here, three of the children (R.C., M.C., and Lo.C.) are placed together in a foster home. They are progressing well, appear happy and healthy, and are on track with developmental milestones. Le.C. is also happy and healthy in her placement and is progressing well for her age. Both foster families are willing to adopt the children and plan to continue facilitating visits between the siblings. The foster parents have been attentive to the medical, social, and developmental needs of the girls.[6] During the termination hearing, the department caseworker reported that the older girls refer to their foster mothers as "mom," showing that their familial identities lie with their foster families.[7] It is clear to us that all of the girls are making tremendous progress at their foster homes, and that these homes are offering the stability that Brook and Jay cannot readily offer. The record reflects that these foster placements are the best possible places for these young girls to continue to thrive.

---

[6] For example, one of the twins requires special services at school. The family has been timely in getting her evaluated and securing proper educational services. As noted, Le.C. has had ongoing medical problems because of her condition at removal, and the foster family has addressed her development. In yet another example, one of the twins has eyesight trouble and the foster family took her to eye appointments and obtained eyeglasses to assist with her sight.

[7] This is particularly true for Lo.C., who has only known her foster family since her birth.

After our review of the record, we affirm the juvenile court and find that termination of both parents' parental rights is in the best interests of all four children. We acknowledge the progress made by Brook and Jay. Although this decision is not what these parents sought, we hope they continue to pursue healthy and stable lives.

**AFFIRMED ON BOTH APPEALS.**